1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARD L., | Case No.: 19-cv-00045-W (JLB) |
| Plaintiff, | **REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| ANDREW M. SAUL, Acting Commissioner of Social Security, | |
| Defendant.[1] | **(ECF Nos. 14, 16)** |

This Report and Recommendation is submitted to the Honorable Thomas J. Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On January 8, 2019, plaintiff Gerard L. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 1383(c) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits ("SSI"). (ECF No. 1.)

---

[1] Andrew M. Saul, the acting Commissioner of Social Security, is substituted as defendant for Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

1   Now pending before the Court and ready for decision are the parties' cross-motions

2   for summary judgment.  (ECF Nos. 14, 16.)  For the reasons set forth herein, the Court

3   **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, that the

4   Commissioner's cross-motion for summary judgment be **GRANTED**, and that Judgment

5   be entered affirming the decision of the Commissioner and dismissing this action with

6   prejudice.

7   ## I.   PROCEDURAL BACKGROUND

8   On March 16, 2015, Plaintiff filed an application for SSI under Title XVI of the

9   Social Security Act, alleging disability beginning May 15, 2013.  (Certified Administrative

10  Record ("AR") at 170–79.)   After his application was denied initially and upon

11  reconsideration (AR 106–11, 115–20), Plaintiff requested an administrative hearing before

12  an administrative law judge ("ALJ").  (AR 121–23.)  An administrative hearing was held

13  on July 18, 2017 before ALJ Mark B. Greenberg.  (AR 33–53.)  Plaintiff appeared at the

14  hearing with counsel, and testimony was taken from him, as well as from a vocational

15  expert ("VE").  (AR 33–53.)

16  As reflected in his February 12, 2018 hearing decision, ALJ Greenberg found that

17  Plaintiff had not been under a disability, as defined in the Social Security Act, from

18  March 16, 2015 through the date of decision.  (AR 15–32.)  ALJ Greenberg's decision

19  became the final decision of the Commissioner on October 24, 2018, when the Appeals

20  Council denied Plaintiff's request for review.  (AR 4–9.)  This timely civil action followed.

21  (AR 1–9.)

22  ## II.   SUMMARY OF THE ALJ'S FINDINGS

23  In rendering his decision, ALJ Greenberg followed the Commissioner's five-step

24  sequential evaluation process.  *See* 20 C.F.R. § 416.920(a).  At step one, ALJ Greenberg

25  found that Plaintiff had not engaged in substantial gainful activity since March 16, 2015,

26  the application date.  (AR 20–21.)

27  At step two, ALJ Greenberg found that Plaintiff had the following severe

28  impairments:  diabetes  mellitus;  obesity,  status  post  gastric  bypass  surgery;

2

gastroesophageal reflux disease (GERD); lumbar strain with lower back pain/disc disease; plantar fasciitis; coronary syndrome with respiratory failure; deep vein thrombosis; obstructive sleep apnea; bipolar disorder; a history of drug and alcohol abuse; there is also a reported history of possible traumatic brain injury.  (AR 21.)

At step three, ALJ Greenberg found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 21–22.)

Next, ALJ Greenberg determined that Plaintiff had the residual functional capacity ("RFC") "to perform medium work" with the following limitations:

> he can frequently perform postural activities but cannot climb ladders, ropes, or scaffolds; he can have no concentrated exposure to extreme heat or extreme wetness; no exposure to hazards; and he is limited to performing simple and routine tasks in a nonpublic setting with no more than occasional interactions with coworkers or supervisors in a habituated work setting.

(AR 23.)

For purposes of his step four determination, ALJ Greenberg determined that Plaintiff had no past relevant work.  (AR 27.)

ALJ Greenberg then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, laundry worker, hand packager), ALJ Greenberg found that Plaintiff was not disabled under the law from March 16, 2015 through the date of decision. (AR 27–28.)

## III.   PLAINTIFF'S CLAIM OF ERROR

As reflected in Plaintiff's motion for summary judgment, the disputed issue that Plaintiff is raising as the ground for reversal and remand is as follows:

1.   Whether ALJ Greenberg's determination that Plaintiff is limited to medium work is supported by substantial evidence in the record.  (*See* ECF No. 14-1.)

///

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991); *see also* 42 U.S.C. § 1383(c)(3). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575–76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529–30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence. *Id.*

## V.   DISCUSSION

### A.   Background

Plaintiff previously applied for a period of disability, disability insurance benefits, and SSI. (AR 18.) In a final decision, dated May 14, 2013, ALJ John W. Wojciechowski determined that Plaintiff had the following severe impairments: lumbar strain, diabetes mellitus, obesity, bipolar disorder, and alcohol abuse/dependence in self-reported remission. (AR 89.) ALJ Wojciechowski then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 90.) Next, ALJ Wojciechowski found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c), consisting of lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. If someone can do medium

4

1
2
3
4
5

work, we determine that he or she can also do medium, light and sedentary work. The claimant is able to stand or walk at least six hours in an eight-hour workday and sitting at least six hours in an eight-hour workday. He can also frequently climb ramps and stairs, balance, bend, stoop, kneel, crouch or crawl. The claimant is able to occasionally climb ladders, ropes and scaffolding. He is also limited to simple routing [sic] tasks with no public contact and only occasional interaction with co-workers and supervisors.

6
7
8
9
10
11

(AR 91.) ALJ Wojciechowski proceeded to find that Plaintiff was unable to perform any past relevant work. (AR 97.) Ultimately, taking into consideration Plaintiff's age, education, work experience, and RFC, ALJ Wojciechowski found that Plaintiff had acquired work skills from past relevant work that were transferrable to other occupations with jobs existing in significant numbers in the national economy and was therefore not disabled. (AR 97–98.)

12
13

In the hearing decision at issue before the Court now, ALJ Greenberg recognized the prior adjudication at the beginning of his decision and stated as follows:

14
15
16
17
18
19
20
21
22

[W]ith respect to the unadjudicated period under the current application for [SSI], there is a rebuttable presumption of continuing nondisability under the *Chavez* Acquiescence Ruling (Social Security Acquiescence Ruling (AR) 97-4(9)). However, upon reviewing the criteria of AR 97-4(9), the **undersigned finds that the presumption of continuing nondisability has been rebutted**. In making this finding, **the undersigned concludes new and material evidence that was not previously considered demonstrates an increase in the severity of the claimant's impairments as well as the existence of new impairments**. In addition, the claimant has changed age categories since then (*see* 20 CFR 416.963). Accordingly, **the undersigned does not give *res judicata* effect to the findings of the prior ALJ's decision** under the sequential evaluation process for determining disability.

23

(AR 18 (emphasis added).)

24
25
26

ALJ Greenberg then proceeded through the sequential evaluation process. At step two, ALJ Greenberg identified the same severe impairments as ALJ Wojciechowski and then concluded that Plaintiff had the following *new* severe impairments: gastroesophageal

27
28

reflux disease (GERD); lumbar strain with lower back pain/disc disease;[2] plantar fasciitis; coronary syndrome with respiratory failure; deep vein thrombosis; obstructive sleep apnea; a history of drug abuse; and a reported history of possible traumatic brain injury.[3] (*Compare* AR 21 *with* AR 89.)[4]

In determining Plaintiff's RFC, ALJ Greenberg discussed Plaintiff's medical records in detail.  (AR 23–25.)  ALJ Greenberg then assigned weight to the various medical and psychological opinions.  (AR 26–27.)  ALJ Greenberg gave great weight to the opinions of (1) S. Laiken, M.D. (state agency medical consultant), (2) R. Masters, M.D. (state agency medical consultant), (3) Harvey Bilik, Psy.D. (state agency psychological consultant), and (4) Myles Friedland, Ph.D. (state agency psychological consultant).  (AR 26–27.)  ALJ Greenberg determined that their "overall opinions regarding [Plaintiff's] medium [RFC], restriction to simple work, and benefit from reduced interactions with the public are supported by the medical records' portrayal of [Plaintiff's] limited positive symptoms, unremarkable diagnostic reports, mostly normal mental status examination findings, routine treatment, and stable condition overall."  (AR 26.)

ALJ Greenberg also gave great weight to the medical interrogatory response submitted by impartial medical expert Harold Milstein, M.D.  (AR 26.)  ALJ Greenberg noted that Dr. Milstein had the benefit of reviewing Plaintiff's complete medical history, and that his conclusions regarding Plaintiff's physical limitations were "consistent with the clinical records' depiction of [Plaintiff's] somewhat controlled back pain, obesity, diabetes,

---

[2]    ALJ Wojciechowski also identified lumbar strain as a severe impairment, but ALJ Greenberg added that it was a "lumbar strain with lower back pain/disc disease."  (AR 21, 89.)

[3]    Both ALJs identified one of Plaintiff's severe impairments as obesity, but ALJ Greenberg noted that it was "obesity, status post gastric bypass surgery."  (AR 21, 89.) Plaintiff underwent gastric bypass surgery in June 2015.  (*See* AR 1299, 1338.)

[4]    The Commissioner acknowledges that ALJ Greenberg "found both an increase in the severity of Plaintiff's impairments since the May 14, 2013 decision as well as new medically determinable impairments."  (ECF No. 16-1 at 7–8.)

and deep vein thrombosis, and the isolated nature of his respiratory failure episode." (AR 26.)  Lastly, ALJ Greenberg assigned little weight to John Keltner, M.D.'s, mental impairment questionnaire and August 2015 statement.  (AR 26.)

ALJ Greenberg concluded that the following RFC is supported by the evidence and medical opinions in the record:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c), except he has the following additional limitations: he can frequently perform postural activities but cannot climb ladders, ropes, or scaffolds; he can have no concentrated exposure to extreme heat or extreme wetness; no exposure to hazards; and he is limited to performing simple and routine tasks in a nonpublic setting with no more than occasional interactions with coworkers or supervisors in a habituated work setting.

(AR 23.)

Therefore, after taking into consideration Plaintiff's worsening and new severe impairments, ALJ Greenberg added the following limitations to Plaintiff's RFC: (1) cannot climb ladders, ropes, or scaffolds, whereas he used to be able to do these things "occasionally"; (2) can have no concentrated exposure to extreme heat or extreme wetness and no exposure to hazards; and (3) must be in a habituated work setting.  (*Compare* AR 23 *with* AR 91.)  ALJ Greenberg concluded that Plaintiff had no past relevant work, but could perform the requirements of occupations that existed in significant numbers in the national economy (*e.g.*, laundry worker, hand packager), and therefore was not disabled from March 16, 2015 through the date of decision.  (AR 27–28.)

## B.    Analysis

In his motion for summary judgment, Plaintiff contends that reversal is warranted because ALJ Greenberg's determination that he was limited to medium work is not supported by substantial evidence.  (ECF No. 14-1 at 4.)  As his first argument, Plaintiff initially argued that ALJ Greenberg improperly found the exact same RFC as ALJ Wojciechowski "despite an admitted worsening of [Plaintiff's] condition." (*Id.*)  However,

Plaintiff now concedes that ALJ Greenberg did not find the exact same RFC as ALJ Wojciechowski. (ECF No. 17 at 5.) Therefore, this argument need be addressed no further.

Next, Plaintiff argues that ALJ Greenberg erred in relying on the opinion of Dr. Laiken because his opinion was based on an application of the *Chavez* presumption of continuing nondisability, despite ALJ Greenberg finding that the *Chavez* presumption had been rebutted. (ECF No. 14-1 at 5.) Lastly, Plaintiff argues that ALJ Greenberg improperly relied on Dr. Milstein's opinion in formulating the RFC. (*Id.* at 7–8.) The Court will address these arguments below.

### 1.   ALJ Greenberg Erred in Relying on Dr. Laiken's Opinion

When adjudicating a subsequent claim involving an unadjudicated period, as here, a presumption of continuing nondisability exists and a claimant is not disabled with respect to that period unless the claimant rebuts the presumption. Social Security Acquiescence Ruling ("SSAR") 97-4(9), 1997 WL 742758, at *3 (Dec. 3, 1997); *see also Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). The presumption, set forth in *Chavez*, may be rebutted by showing a "changed circumstance" affecting the issue of disability such as a change in a claimant's age category, an increase in the severity of a claimant's impairment, or the alleged existence of an impairment not previously considered. *Id.*; *see also Chavez*, 844 F.2d at 693 ("The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability.").

However, even if a claimant rebuts the presumption, the prior RFC must be given effect unless there is new and material evidence relating to the determination or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding. *Id.*; *Chavez*, 844 F.2d at 694; *see also Alekseyevets v. Colvin*, 524 F. App'x 341, 344 (9th Cir. 2013) ("Although the first ALJ's RFC findings are entitled to 'some res judicata consideration,' . . . the *Chavez* presumption does not prohibit a subsequent ALJ from considering new medical information and making an updated RFC determination.") (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008)).

1  Here, in support of his determination that Plaintiff had the ability to perform medium

2  work, ALJ Greenberg relied, at least in part, on the opinions of Dr. Laiken, Dr. Masters,

3  and Dr. Milstein, to whose opinions he gave great weight.  (AR 26.)  On July 8, 2015,

4  Dr. Laiken, a state agency medical consultant, opined that Plaintiff met the exertional

5  requirements[5] supporting medium work.[6]  (AR 59, 61–62.)  Specifically, Dr. Laiken opined

6  in a physical RFC assessment that Plaintiff could occasionally lift and/or carry 50 pounds,

7  frequently lift and/or carry 25 pounds, stand and/or walk (with normal breaks) about six

8  hours in an eight-hour workday, sit (with normal breaks) about six hours in an eight-hour

9  workday, and push and/or pull an unlimited amount other than as shown for lift and/or

10  carry.  (AR 61–62.)  Dr. Laiken further opined that Plaintiff could frequently climb ramps

11  and stairs, balance, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes,

12  and scaffolds.  (AR 62.)  Dr. Laiken identified no environmental or communicative

13  limitations.  (AR 62.)

14  Under the heading "Findings of Fact and Analysis of Evidence," Dr. Laiken

15  discussed Plaintiff's physical issues, stating as follows:

16  [Medical record] reviewed and Hx is essentially as described above.  Prior
17  claim was denied by ALJ on 5/14/14.  CE gave [medical source statement]
   with 50/25 [lift and carry] & 6/8 [walking/standing].  Per CFRs quoted by
18  ALJ this is a medium, not a light RFC.  [C]ardiac [workup] was negative,
19  despite the multiple ER visits.  There has been no material change since ALJ

20

21  [5]  An "exertional activity" is defined as "[o]ne of the primary strength activities
22  (sitting, standing, walking, lifting, carrying, pushing, and pulling) defining a level of
   work."  Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).
23  [6]  Medium work is defined, in relevant part, as follows:

24  [L]ifting no more than 50 pounds at a time with frequent lifting or carrying of
25  objects weighing up to 25 pounds.  A full range of medium work requires
   standing or walking, off and on, for a total of approximately 6 hours in an 8-
26  hour workday in order to meet the requirements of frequent lifting or carrying
   objects weighing up to 25 pounds.  As in light work, sitting may occur
27  intermittently during the remaining time.

28  SSR 83-10, 1983 WL 31251, at *6; *see also* 20 C.F.R. § 416.967(c).

1
2

decision.  Chavez applies and ALJ RFC will be adopted.  Stuart L Laiken, MD, PhD 19/04, 07/08/2015.

3
4
5

(AR 59.)  In determining Plaintiff's RFC, ALJ Greenberg adopted Dr. Laiken's opinions in part but rejected his opinion that Plaintiff could occasionally climb ladders, ropes, and scaffolds and added environmental limitations.

6
7
8
9
10
11
12
13
14
15
16

Plaintiff argues that ALJ Greenberg erred in relying on Dr. Laiken because Dr. Laiken applied the *Chavez* presumption of continuing disability in forming his opinion. Based on the Court's review of Dr. Laiken's opinion, it appears that he simply applied the *Chavez* presumption, as his physical RFC assessment reflects the same restrictions identified by ALJ Wojciechowski in Plaintiff's prior RFC.  (*Compare* AR 61–62 *with* AR 91.)[7]  To the extent Dr. Laiken simply applied the *Chavez* presumption, the Court agrees that ALJ Greenberg erred in relying on his opinion to support Plaintiff's RFC, as it contradicts ALJ Greenberg's finding that there were several new impairments and changed circumstances. *See Vasquez v. Astrue*, 572 F.3d 586, 598 (9th Cir. 2009) (finding the ALJ's improper reliance on the *Chavez* presumption constituted legal error).[8]  However, for the

17

---

18
19
20
21
22
23
24
25
26

[7]     The Court notes that the Disability Adjudicator/Examiner stated in Plaintiff's initial Disability Determination Explanation that "*Chavez* applies, but [is] not adopted." (AR 66–67.) This contrasts with Dr. Laiken's statement about his own analysis quoted above— "*Chavez* applies and ALJ RFC will be adopted." (AR 59.)  The former statement, apparently attributable to the Disability Adjudicator/Examiner, appears to be in recognition of the fact that Dr. Bilik, who assessed Plaintiff's mental RFC, found more severe limitations and suggested not adopting the prior RFC in full. (*See* AR 59–66.) Dr. Laiken signed and dated both his assessment and Personalized Disability Explanation on 07/08/2015. (AR 59, 67.)  Conversely, Dr. Bilik's expression that adoption of the prior ALJ decision is not appropriate due to changes in Plaintiff's mental health is dated 07/27/15, and the Disability Adjudicator/Examiner's statement about *Chavez* not being adopted is dated 07/28/15. (AR 59–60, 65–67.) The Court therefore agrees with Plaintiff's conclusion that Dr. Laiken relied on the *Chavez* presumption in forming his opinion.

27
28

[8]     Even if ALJ Greenberg was entitled to rely on Dr. Laiken's opinion, the Court expresses the same concerns about Dr. Laiken's opinion as it does about Dr. Masters' opinion, which the Court addresses below.

reasons set forth below, the Court finds that this error was harmless.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination" (citations omitted)); *see also Gunnels v. Comm'r of Soc. Sec. Admin.*, No. CV-18-00543-TUC-EJM, 2020 WL 525681, at *11 (D. Ariz. Feb. 3, 2020) (finding the ALJ's error in applying *Chavez* harmless where the ALJ still conducted the five-step sequential inquiry and made an "RFC assessment based on the medical evidence, objective findings, opinion statements, and Plaintiff's testimony" (citing *Plummer v. Berryhill*, 747 F. App'x 631 (9th Cir. 2019)).

### 2.   ALJ Greenberg's Determination that Plaintiff Was Limited to Medium Work is Supported by Substantial Evidence in the Record

Even if ALJ Greenberg erred in relying on Dr. Laiken's opinion, it was not the only evidence in the record, nor the only opinion, on which ALJ Greenberg relied to determine Plaintiff's RFC to perform medium work.  The Court now turns to examining whether ALJ Greenberg's determination that Plaintiff was able to perform medium work is supported by substantial evidence in the record.  Specifically, the Court turns to address the opinions of Dr. Masters (not discussed by Plaintiff) and Dr. Milstein.

#### a.   *Dr. Masters' Opinion*

On September 18, 2015, Dr. Masters, another state agency medical consultant, generally concurred with Dr. Laiken's RFC assessment, but added additional restrictions. Dr. Masters added that Plaintiff (1) could never climb ladders, ropes, and scaffolds (due to his morbid obesity), and (2) had certain environmental limitations, such that he should avoid concentrated exposure to extreme heat and wetness, and avoid even moderate exposure to hazards (due to his morbid obesity).  (AR 76–77.)  Under the heading "Findings of Fact and Analysis of Evidence," Dr. Masters discussed Plaintiff's physical issues, stating as follows:

> This morbidly obese 57 [year old] male alleges disability due to pericarditis, NIDDM, angina, obesity, and GERD.  Cardiac w/u revealed an old non-transmural injury of the mid to distal anteroseptal wall with a small (5%) area

11

of peri-infarct ischemia of the (L) distal lateral LV wall.  The LV EF was 70%.  The clmt has been treated for lumbar strain.  The BP was 86/57 mmHg on 5/27/15.

On recon, there are no new allegations and additional records indicate no material change in medical status.  I have reviewed the evidence in the file and a determination of medium RFC, which is consistent with the ALJ decision dated 5/14/13, is appropriate.  RHMASTERS, MD #46.

(AR 72.)  Similarly, under the heading "RFC – Additional Explanation," Dr. Masters stated: "ALJ decision adopted."  (AR 77.)[9]

In his decision, ALJ Greenberg adopted in full Dr. Masters' opinions in determining Plaintiff's physical RFC.  (*See* AR 23.)  ALJ Greenberg explained that he accorded "greater weight to Dr. Masters'[] physical assessment over that of Dr. Laiken because Dr. Masters'[] specification of postural and environmental limitations is more consistent with the evidence as a whole, including the evidence of [Plaintiff's] persistent complaints of pain and probable limitations associated with his obesity."  (AR 26.)

### b. *Dr. Milstein's Opinion*

During the administrative hearing, ALJ Greenberg stated: "So, we've got a lot of records that the state agency didn't see. . . .  [S]o I'm thinking . . . [of] having [an] interrogatory on the physical."[10]   (AR 48; *see also* AR 18.)   Accordingly, on November 13, 2017, ALJ Greenberg requested a professional opinion from Dr. Milstein in the form of interrogatories.  (AR 2062–72.)  ALJ Greenberg attached the interrogatory

---

[9]   Although Dr. Masters stated "ALJ decision adopted," he clearly did not apply the *Chavez* presumption.  (AR 72.)  Not only does his RFC assessment differ from that of ALJ Wojciechowski (*compare* AR 75–77 *with* AR 91), but he stated that he reviewed the evidence in the file and made a determination "which is consistent with the ALJ decision" not an application of the decision (AR 72).

[10]   This contrasts with Plaintiff's assertion, not born out by the record, that ALJ Greenberg stated that he would be ordering a consultative exam.  (ECF 14-1 at 5, 7.)

form and a disc containing all "exhibits selected for inclusion in the record of this case" for Dr. Milstein's review.  (AR 2062.)

On or about November 15, 2017, Dr. Milstein submitted a response.  (AR 2074–84.) Dr. Milstein opined that Plaintiff could occasionally lift and carry 50 pounds, frequently lift and carry 20 pounds, sit six hours without interruption, stand three hours without interruption, and walk one hour without interruption.  (AR 2079–80.)  Dr. Milstein further opined that Plaintiff could sit eight hours total in an eight-hour workday, stand four hours total in an eight-hour workday, and walk two hours total in an eight-hour workday.  (AR 2080.)  Dr. Milstein also opined that Plaintiff could continuously reach, handle, finger, feel, and push/pull; frequently operate foot controls, balance, stoop, and kneel; and occasionally climb stairs/ramps, climb ladders/scaffolds, crouch, and crawl.   (AR 2081–82.) Dr. Milstein attributed Plaintiff's postural (*e.g.*, climbing, crouching, crawling) and lifting/carrying limitations to his chronic back pain and obesity.  (AR 2079, 2082.)

In addition, Dr. Milstein opined that Plaintiff could continuously be exposed to very loud noises, extreme heat and cold, vibrations, dust, odors, fumes and pulmonary irritants, humidity and wetness, and operate a motor vehicle, but could only occasionally be exposed to unprotected heights and moving mechanical parts.  (AR 2083.)  Dr. Milstein attributed these limitations to Plaintiff's diabetes and noted his history of respiratory failure, but he added that Plaintiff had no lingering limitations.  (AR 2083.)

ALJ Greenberg gave great weight to Dr. Milstein's opinions.   (AR 26.) ALJ Greenberg noted that Dr. Milstein had the benefit of reviewing Plaintiff's complete medical history and found that his conclusions were "consistent with the clinical records' depiction of the claimant's somewhat controlled back pain, obesity, diabetes, and deep vein thrombosis, and the isolated nature of his respiratory failure episode." (AR 26.)  However, ALJ Greenberg gave greater weight to Dr. Masters' opinion because it was more consistent with the evidence.  (AR 26.)

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.   *Analysis*

i.   Dr. Masters

Plaintiff does not address the opinion of Dr. Masters, to which ALJ Greenberg gave the greatest weight.   ALJ Greenberg adopted Dr. Masters' opinions as to Plaintiff's physical restrictions in full.   Instead, Plaintiff focuses on ALJ Greenberg's assessment of Dr. Milstein's opinion.   However, the Court will first address Dr. Masters' opinion.

Dr. Masters reviewed and considered Plaintiff's medical records through approximately September 2015.   Plaintiff's medical records continue, however, through March 2017.   (*See* AR 1770–71, 1784.)   ALJ Greenberg summarized a portion of Plaintiff's records between September 2015 and March 2017 as follows:

> In March 2016, the claimant complained of chest pains, though a cardiac stress showed no indication of acute ischemia, and no indications of acute coronary syndrome were found ([AR 1913 (3/25/16)].   However, from March 25 to April 13, 2016, the claimant was hospitalized due to concerns for possible acute coronary syndrome, acute renal failure, pneumonia, and respiratory failure, but despite these conditions, an electrocardiogram and perfusion scan still showed negative findings without signs of congestive heart failure ([AR 1915, 1923, 1938, 1983, 2038–39, 2056]).

> Although the claimant developed deep vein thrombosis in the left brachial and basilica veins, no such impairment was found in his lower extremities ([AR 1910–11 (4/1/16), 1978–79 (4/1/16), 2033–34 (4/1/16)]).   To treat his left arm deep vein thrombosis, the claimant underwent Dabigatran anticoagulant therapy ([AR 1269 (4/26/16)]).   In late May 2016, a superficial thrombus was found in the right cephalic vein, but the claimant was again continued on Dabigatran with instructions to apply warm compresses to relieve any swelling ([AR 1821 (5/25/16), 1863 (5/25/16)]).   An echocardiogram from May 2016 indicated moderate concentric left ventricular hypertrophy, mild diastolic dysfunction, a moderately dilated left atrium, and otherwise normal findings ([AR 1416 (5/23/16)]).   Recent treatment records emphasize the claimant's lack of chest pain, shortness of breath, or abdominal pain ([AR 1457 (3/25/17)]).

(AR 25.)   Based on the foregoing, it is clear, as ALJ Greenberg recognized, that Dr. Masters did not have access to many of Plaintiff's records.   (AR 48.)   Notably, at least two of the new severe impairments identified by ALJ Greenberg in his decision—Plaintiffs' coronary

14

syndrome with respiratory failure and deep vein thrombosis—did not appear until after Dr. Masters formulated his opinion.

Opinions of a non-examining physician may serve as substantial evidence only when they are supported by other evidence in the record and are consistent with it. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). "[T]he fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence." *Maliha K. v. Saul*, No. 8:19-cv-00877-MAA, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020) (citing *Owen v. Saul*, 808 F. App'x 421 (9th Cir. 2020) ("[T]here is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time."); *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) ("[A]lthough the non-examining state agency physicians did not review any evidence beyond August 2014, the ALJ did not err in giving great weight to the physicians' opinions.")).

At the time Dr. Masters issued his opinion, he had considered all the evidence before him. Accordingly, ALJ Greenberg did not err in giving great weight to his opinion. *See Meadows*, 807 F. App'x at 647. However, it is "erroneous for an ALJ to rely on a non-examining physician's opinion if the physician had no opportunity to review subsequent evidence that undermined that opinion." *Maliha K.*, 2020 WL 2113671, at *6 (citing *Hill v. Astrue*, 698 F.3d 1153, 1160–61 (9th Cir. 2012) (holding that a non-examining physician's opinion that failed to consider a more recent, severe panic attack that was inconsistent with the physician's opinion could not provide substantial evidence to support the ALJ's decision)).

Here, ALJ Greenberg does not identify any subsequent evidence that undermined Dr. Masters' opinion. Dr. Masters had no opportunity, however, to review any evidence regarding two of Plaintiff's new severe impairments. Therefore, the Court finds that

Dr. Masters' opinion *alone* could not provide substantial evidence to support Plaintiff's RFC. Accordingly, the Court turns to ALJ Greenberg's assessment of Dr. Milstein's opinion.

### ii.     Dr. Milstein

The only physician who did review all of Plaintiff's records was Dr. Milstein, who, like the state agency medical consultants, was a non-examining physician. Plaintiff argues that Dr. Milstein's opinion does not support the full range of medium work.[11]  (ECF No. 14-1 at 7.)  SSR 83-10 provides that medium work "requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday" and that "sitting may occur intermittently during the remaining time."  SSR 83-10, 1983 WL 31251, at *6.[12]  Without citing to any supporting authority for his interpretation, Plaintiff argues that the word "may" indicates "that to perform the full range of medium work, one must have the ability to stand or walk for *more than six hour*s as one 'may' or 'may not' have the opportunity to sit for two hours of the day."  (ECF No. 14-1 at 8 (emphasis added).)  In other words, Plaintiff argues that "may" means that "the person *might* sit in the remaining two hours," "[b]ut even if the worker does sit, the ruling does not imply that the person sits for the remaining two hours."  (*Id.*)  Plaintiff concludes that "[i]t is the inability sit down after six hours of standing and lifting that precludes the full range of medium work."  (*Id.*)

The Court finds that Dr. Milstein's opinion does support ALJ Greenberg's determination that Plaintiff had the RFC to perform medium work. Dr. Milstein opined

---

[11]     The Court notes that ALJ Greenberg determined that Plaintiff's ability to perform the full range of work at the medium exertional level was "impeded by additional [non-exertional] limitations," which he included in his hypothetical to the VE.  (AR 27–28.)

[12]     SSRs are "binding on ALJs."  *Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  SSRs do not have the force of law.  *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001).  However, because they represent the Commissioner's interpretation of the agency's regulations, courts give them some deference.  *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (en banc).

that Plaintiff had the ability to walk or stand, off and on, approximately six hours in an eight-hour day.[13]  (*See* AR 2080.)  That is consistent with SSR 83-10, which provides that "medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds."  SSR 83-10, 1983 WL 31251, at *6.  Because Dr. Milstein's opinion matches the very definition of the limits of medium work, Plaintiff's argument that the opinion does not support ALJ Greenberg's determination is without merit.  *See Bailey v. Astrue*, No. EDCV09-1452-OP, 2010 WL 1233459, at *4 (C.D. Cal. Mar. 22, 2010) ("By definition, therefore, Plaintiff's contention that 'many jobs that are considered light work[14] may require an individual like the plaintiff, to sit, stand and/or walk for *more than six hours* in an eight hour day' . . . is without support.").

Finally, where, as here, the ALJ refers to "medium work" in the hypothetical given to the VE, courts have determined that that reference to medium work is widely understood to encompass the ability to walk or stand, off and on, approximately six hours in an eight-hour day.  (*See* AR 49.)  As one district court stated:

---

[13]   ALJ Greenberg's decision states that Dr Milstein opined that Plaintiff "can stand for four hours total" and "walk for two hours total."  (AR 26.)  Although ALJ Greenberg did not explicitly combine those numbers, his determination that Plaintiff could perform medium work without specifically rejecting Dr. Milstein's opinions regarding his ability to stand/walk, indicates that he implicitly combined them.  Despite Plaintiff's suggestion to the contrary (ECF No. 17 at 3), he was entitled to do so.  *See Davis v. Berryhill*, 743 F. App'x 846, 850 (9th Cir. 2018) (determining the ALJ's finding that the plaintiff could perform "'light work,' which entails 'standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday,' and '[s]itting may occur intermittently during the remaining time'" is consistent with the examining physician's opinion that the plaintiff "could stand and walk for six hours a day in combination and up to three hours a day each" (citing SSR 83-10)).

[14]   As with medium work, light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" and "[s]itting may occur intermittently during the remaining time."  SSR 83-10, 1983 WL 31251, at *6.

1
2
3
4
5

> SSR 83-10 was published in 1983.  Since that time, ALJs and VEs with experience conducting social security disability benefits hearings have understood medium work as requiring the ability to stand or walk for *up to 6 hours*.  There is no reason to think that the ALJ and VE in this case lacked that understanding.  Thus, the ALJ's reference to medium work [in the RFC] *supplied a 6-hour limitation on walking and standing*, and the ALJ did not pose an incomplete hypothetical to the VE.

6
7
8
9
10
11
12
13
14
15
16
17

*James T. v. Saul*, No. 2:18-CV-08794-KES, 2019 WL 3017755, at *2 (C.D. Cal. July 10, 2019) (emphasis added); *see also Christopher P. v. Saul*, No. CV 18-6484-SP, 2020 WL 551596, at *3 (C.D. Cal. Jan. 31, 2020) (finding the ALJ's reference to medium work in his hypothetical sufficiently captured the plaintiff's RFC limitations to standing or walking for six hours in an eight-hour workday); *Mitzi D. v. Saul*, No. SA CV 18-01065-DFM, 2019 WL 8112507, at *2 (C.D. Cal. Dec. 13, 2019) ("Given that SSR 83-10 has been in play for over thirty years, there is no reason to think the VE understood light work[15] to encompass anything other than approximately six hours of standing or walking."); *but see Linda H. v. Saul*, No. CV 19-4321-PLA, 2020 WL 1244359, at *4–5 (C.D. Cal. Mar. 16, 2020) (finding the ALJ erred in failing to specifically include the RFC's six-hour walking/standing limitation in the hypothetical to the VE "after the VE clearly stated her expert opinion that there is no sitting *at all* in a sales associate job" she identified).

18

### iii.   Substantial Evidence

19
20
21
22
23
24
25

As stated above, the opinions of non-examining physicians may serve as substantial evidence only when their opinions "are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–01 (9th Cir. 1999) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).  Where medical reports are inconclusive, "questions of

26
27
28

---

[15]   *See supra* note 14.

credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Id.* (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Here, in determining that Plaintiff could perform medium work, ALJ Greenberg gave great weight to the opinions of three non-examining physicians who all opined that Plaintiff had the ability to walk or stand, off and on, approximately six hours in an eight-hour day, which, as stated above, is consistent with medium work. (*See* AR 26, 62, 76, 2080.) At a minimum, two of these opinions constituted substantial evidence on which ALJ Greenberg could rely. None of these opinions were contradicted. *See Magallanes*, 881 F.2d at 752–53 (finding that the opinion of a non-treating, non-examining medical adviser could serve as substantial evidence where it was "consistent with other evidence" in the record). ALJ Greenberg also set out in his decision a detailed and thorough summary of the independent clinical findings and other evidence in the record, stated his interpretation thereof, and made findings.

The Court finds no error in ALJ Greenberg's summary of the evidence. Moreover, Plaintiff concedes that ALJ Greenberg "fairly and accurately summarized the medical and non-medical evidence of records," except as otherwise specifically stated in his motion. (ECF No. 14-1 at 3.) Plaintiff summarizes a portion of his medical records to demonstrate that there was a "worsening of [his] condition," but he does not specifically point to anything in ALJ Greenberg's summary of the evidence that is inaccurate. (*See id.* at 5–7.)

Plaintiff highlights his "decreased exertional capacity to remain standing with his small fiber neuropathy in his feet and vein issues and [to] exert himself with his heart conditions" to support his contention that his condition had worsened since the last decision. (ECF No. 17 at 5.) Yet, as discussed above, ALJ Greenberg agreed that Plaintiff's condition had worsened. ALJ Greenberg further identified each of these conditions in his decision, summarized the independent clinical findings addressing them, stated his interpretation thereof, and made appropriate findings. For example, ALJ Greenberg identified neuropathy as one of Plaintiff's impairments, but determined that this impairment did not preclude Plaintiff from exerting himself at the medium level

because "Gabapentin helps his neuropathy symptoms" and "[a]n electrodiagnostic study conducted in March 2015 was normal, as it showed no evidence of polyneuropathy or lumbosacral root lesion." (AR 25 (citing AR 889–91, 1302).) As quoted above, ALJ Greenberg similarly addressed Plaintiff's deep vein thrombosis and heart condition.

For the foregoing reasons, the Court finds that ALJ Greenberg's RFC determination that Plaintiff could perform medium work is supported by substantial evidence in the record.

## VI.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's cross-motion for summary judgment be **GRANTED**, and that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation shall be filed with the Court and served on all parties **no later than July 17, 2020**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than July 24, 2020**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 445 (9th Cir 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir 1991).

**IT IS SO ORDERED.**

Dated:  July 2, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge

19-cv-00045-W (JLB)